All right, Mr. Taylor, the Court appreciates your willingness to accept the appointment in this case under the Criminal Justice Act, and you may proceed with your argument. Thank you, Your Honor. Good afternoon, Honorable Judges of the Eighth Circuit, Ms. Scorpanini, and may it please the Court. My name is Lucas Taylor, and I'm arguing on behalf of the appellant, William Kennedy. With our brief amount of time here today, I just want to focus on the denial of the defendant's motion to suppress and the two issues related to that. First, the unlawful extension of the seizure of Mr. Kennedy without reasonable suspicion, and second, the pat-down search of Mr. Kennedy without consent or reasonable suspicion of a dangerous weapon. And if I may, I'd like to start at where I believe this investigation by Officer Jackson and Officer Frey went sideways. At one point, they arrest the driver of the vehicle that Mr. Kennedy is a passenger in on an outstanding warrant and detain her in the back of their squad car. And at that point, Officers Frey and Jackson are desperate to find some legal justification to search the vehicle that they have stopped, and they are struggling to figure out what cause they have. First, they debate amongst themselves whether they have a search incident to arrest, which they correctly determine they don't, and then they try to gain consent from Ms. Kerr to search the vehicle, which she denies and asserts her constitutional right to counsel. And I believe it's important to start at this juncture because I think the question is, what is the investigation regarding? The vehicle objectively was stopped because of an issue with the license plate cover that covered up some pertinent information on the license plate, and we do have some broad allegation that they're investigating vehicle robberies. And starting at that point, what we have in the record is very broad and vague description of a general crime, that we have in the city of Norwalk vehicles being burglarized. What the record is devoid of is any sort of specifics about what is happening, including when these crimes actually occurred, where specifically they're occurring, and if there's actually any details of a description of the people perpetrating these crimes or even a vehicle that's involved. Because what we have in the record is nothing that connects the vehicle that Mr. Kennedy is a passenger in to this very broad crime. And if we take this description of the vehicle burglaries to the extreme, it's almost saying that in the city of Norwalk, we have issues with drunk drivers at 2.30 in the morning on this particular road. I think this court would be very hesitant to find that a vehicle operating at 2.30 in the morning on a road in Norwalk would amount to reasonable suspicion. What about the backseat passenger that I think that the report says he was moving around, sort of acting a little odd visually, and had given a false name? Does that give the officers reasonable suspicion to pursue a little further? So two answers to that point. First, what I would ask the court to consider is that each individual in this vehicle should be considered separately. And what I mean by that is... Well, I don't know. Is that necessarily true? I mean, the officers are facing a situation and all they need is reasonable suspicion. I shouldn't have interrupted you. I'm sorry, but I guess I'm interested in your answer. So I should let you provide that. Well, in thinking in this context, we have a driver with an outstanding arrest warrant and we have another passenger with an outstanding arrest warrant. And just for the sake of argument, assuming there's nothing else going on, we won't assume that Mr. Kennedy is tied to this traffic stop as long as they're processing the passenger and the driver. At some point, once they address the concerns of Ms. Kerr and the passenger, McNair, once they're detained and discovered that they have the outstanding warrants, there's no more cause to keep Mr. Kennedy seized. He should be free to leave as soon as he can, arrange a ride to pick him up from the location where the vehicle has been stopped. And that's the point I want to make. That came sometime later, didn't it? I mean, what was the issue about when the traffic stop actually ended? There was no one there with a valid driver's license who wasn't under arrest as I understood it. Is that right? And that's correct. And it is part of the record that there was some discussions between the officers and McNair and Mr. Kennedy regarding arranging a ride to pick them up. And finishing my thought on this, Mr. Kennedy is not necessarily tied to the issues involving the passenger and he's not tied to the issues involving the driver. So at the end of the day, I don't believe that it's necessarily that because there's an outstanding arrest warrant for the passenger, McNair, that reasonable suspicion as it relates to Mr. Kennedy himself continues on. And as I understand in the government's argument in their brief, we have some case sites regarding Espinosa and Soderman regarding drivers who don't have driver's licenses and the traffic stop can continue on because they have to address the issue with what's going to happen with the vehicle and also that the vehicle cannot be removed by the driver due to the lack of driver's license. And again, I would distinguish those two cases as cited by the government because Mr. Kennedy is merely a passenger in this vehicle. He has no obligation to this vehicle. He has no obligation to figure out what's going to happen to this vehicle. So again, the extension of the stop should be considered individually for both for the three individuals in this vehicle. How is a practical matter with that work? How do you separate out a traffic stop as to individual people? What would that look like? What do you think should have happened that would be permissible as it relates to your client? Well, and the only point is I don't believe it changes necessarily how we handle traffic stops. I think ultimately the point is at some point, Mr. Kennedy needs to remove himself from the other two individuals in this vehicle. And while we're not saying that he should be arrested along with the driver because the driver has an outstanding arrest warrant. So at some point, he is free to leave this situation, be picked up by the person he arranged his ride with and be taken away from the scene. So I don't believe that change is necessarily how we look at a traffic stop. It's just a matter of fact, if there was no other issues involving Mr. Kennedy, he wouldn't be free to leave before the driver and the passenger. Didn't the out search though generate more information that justified keeping him longer? Well, and I think we have to go back Are you saying he should have been released before the pat-down even occurred? Right. It is our position that there is no more reasonable suspicion to have Mr. Kennedy be detained because again, the outstanding arrest warrants. At what point in time though? Well, it is our point, it is my point, that we have a traffic stop that's initiated because of the license plate. There's discovery of the two of the pat-down. There's no more reasonable suspicion that attaches to Mr. Kennedy and keeps him seized at that point. And if the court, if I may back up a little bit, and I know there's some points raised in the government's brief regarding the fact that it's early in the morning, it's cold out, this vehicle's on the side of the road. If Mr. Kennedy is still part of this traffic stop, it's not because there's reasonable suspicion of criminal activity. It'd be more under the lines of community caretaker function of law enforcement, ensuring his safety and his well-being. And if that's why he's being at, that's why he's still part of this traffic stop, that doesn't give law enforcement any sort of investigatory powers to search him, frisk him, or the like. It is only regarding, oh, yeah, I see that I'm almost out of time. I'd like to reserve the rest of this for my rebuttal. Thank you. All right. Very well. You may do so. Ms. Scarpinetti, we'll hear from you. But you'll first have to turn on your microphone before we can hear from you. May I please the court? I'd like to start with the issue of when did the traffic stop end? The traffic stop ended at 440 when the tow truck arrived to tow the vehicle away. This tow truck had been called for by officers, as can be heard on the dash cam, right after they learned that the driver, Ms. Kerr, did not have a driver's license and learned that the passengers were suspended. So that was promptly called for, and so the officers were under Rodriguez. When you say 440, that doesn't mean anything without some context. When was the stop initiated? Yes, Your Honor. The traffic stop was initiated at 322 in the morning. But wouldn't a passenger, if there was no other basis to hold him, be permitted to leave before the tow truck arrives? Well, he did not request to leave. He said he was content to leave, and nor did the officer make the decision of whether or not he could leave at that point. So that just did not arise. Counsel, when did the pat-down occur? The pat-down occurred at, one moment please, Ron. I have that right here. Okay, at 342, Officer Fry asked Mr. Kennedy, hey, you want to jump out for me, partner? That's when he effectively seized him. So that is 20 minutes into the stop when he asked that. And then right at 342, same minute, Mr. Kennedy got out of the vehicle, walked back towards Officer Fry, and at that point, Officer Fry said he wanted to confirm that he had no weapons. And Mr. Kennedy confirmed he had no weapons and said, quote, you care if I pat you down real quick to make sure? And that goes to our point we'll get to, that there was another reason to search here, or permission to search to pat down by consent. At that point, Mr. Kennedy raised his hand, said nothing, but raised his hands in the air. And the judge found that that was an indication of consent? Yes. Does that produce, what, money in a scale, as I recall? Yes, and in the manner of the way this search went on is important too. And which gets to the last point of did this exceed a limited scope for weapons if you go for the second basis for the search, which is reasonable suspicion to look for a weapon. And so what happened was the, Mr. Kennedy started pulling items out of his pocket. And he pulled from his pockets first, and the officer was narrating this, he pulled first a screwdriver and keys, which, screwdrivers are tools of the burglary trade. He pulled out $3,000 in currency, and as he pulled the currency out, he told the, the officer could see he was hiding a digital scale underneath. The officer then observed that scale and observed it had white residue, and in talking with Mr. Kennedy about it, Mr. Kennedy said that this was because of his hobby of collecting gold, and the officer noted that it appeared to be white, consistent with methamphetamine. So it's those things that were pulled out. Shortly thereafter, Mr. Kennedy indicated that he had been using for about three weeks, which gave the probable cause to then go ahead and, under the automobile exception, search the vehicle there at the side of the road, which they did expeditiously. And I'm getting ahead of myself, but I would like to point out the fact that there's, the fact that this is a, related to the mission of the stop, the safety related to the mission of the stop, is sort of additionally confirmed by the fact that even after the seizure of meth, which occurred at three, excuse me, the, about 45 minutes after the seizure of methamphetamine from the car, is when a tow truck arrived. So, in terms of whether there's some sort of pretext or something going on here, the officers waited another 45 minutes, as did everyone on scene, for the tow truck to arrive before they could leave and go to the next phase of their investigation that night, which was handing these three over to officers for transport to the jail. So I would go back to my first part of the argument, which is that this vehicle was still in the lane of traffic during this time, and you can see it on a map that the car is about one foot over the white line. You can see it's farther than a tire's width over the white line. The officers, although, it's suggested in the reply brief that this would be no different than a flat tire and you could leave this car on the side of the road, and some private individuals may, but law enforcement officers are not going to leave a car at the side of the road, sticking that far into the road, on this dark road at 3.15 in the morning, you know, near Norwalk, Iowa. There was no testimony on that, though, correct? There was no hearing, so what you're arguing from is basically from seeing the video and what a reasonable officer must have thought, right? Because we've got no testimony as to what the officers actually thought or were doing or were concerned about, right? We do have. We have, first of all, Exhibits 1 and 2, which are the dash cam, which were admitted by the court as evidence. We also have the reports that were admitted as... Right, right, and I'm sorry, I don't want to take up too much of your time. I just want to clarify that we've got the reports and we've got the video, but there wasn't an opportunity for the testimony of the sorts to examine them about the reasons for it being on the side of the road, correct? Correct. Both parties waived hearing on the matter. So, the claim that we got by Mr. Kennedy is that he had a ride coming and that was certainly indicated during the stop that he was asked to check the ETA of someone who could come to pick up this car, but the truth of the matter is, no car arrived during that time, no ride arrived, and so it necessarily meant the traffic stop did not end until the tow truck arrived. Additionally, there was a related mission of the traffic stop, and that is to identify the backseat passenger. Very early on, the second officer who arrived on scene, who knew Mr. Robbins, the backseat passenger was purporting to be, identified that it was not, in fact, Mr. Robbins. So, either as part of the stop or as reasonable suspicion that was developing as to other matters afoot during the stop, the officer needed to determine who this individual was that was hiding their identity, and was able to do so, but that occurred after the pat-down search. And so that was also a second matter that needed to be resolved, either as part of the stop or as reasonable suspicion to resolve that matter. Next, the second thing that the judge found is not only that the traffic stop continued, but that there was reasonable suspicion to extend the stop. And reasonable suspicion included, as noted, that there's this backseat passenger slouching from side to side, the furtive movements and the shaking of he, and also the shaking of the driver. The false information provided by the backseat passenger. The fact of what occurred before this traffic stop, which is that officers saw this vehicle in a residential neighborhood at 3.15 in the morning, driving around, pulling into a driveway, and letting two individuals out of the vehicle who were both carrying backpacks. They did not walk into the house where they were let off by this car, but rather walked down the street. And although, as Mr. Taylor indicates, we don't have specifics about the burglaries that the officers were aware of in Norwalk, the reports indicate that they were concerned about burglaries that had been committed by individuals in Norwalk who had been dropped off by others and were in neighborhoods at night breaking into vehicles. So that was also on the officer's mind. And then the inquiry of the driver who said that they had given a ride to these individuals, she knew the male as Danny, didn't know the female's name, met him in a hotel room, and were dropping him off at this hour of night at a house that was not their own. So that all culminated together with the fact that there's a lack of vehicle registration in this car, and there's an absence of the owner from this car. And again, circling back to 3.15 in the morning. Again, it's similar to the Davis case. And of course, with these reasonable suspicion determinations, I know that you need to look. Every case stands alone, and it's the facts as they are in this case. But in Davis, nervous behavior, suspicious travel plans, and absence of a third-party owner were part of what led to reasonable suspicion. Here we have nervous behavior observed. We have not suspicious travel plans, but an odd travel pattern prior to the traffic stop, and no registration of vehicle, and the owner was not in the vehicle. And then, so we have the consent to search, which I've discussed. We also have a reasonable suspicion for pat-down for weapons, given the same reasonable suspicion that was just discussed. Finally, pat-down did not exceed the scope of the limited search for weapons, based upon the manner in which it was handled. The officer saw the meth pipe only in plain view with his flashlight in the pocket during the conducting of the encounter with Mr. Kennedy. I see my time is up. I would thank you very much and request that you affirm the decision of the District Court denying suppression, as well as the decision, the sentencing decision. Since you have that timeline in front of you there, when was Kennedy actually arrested then? How long after the pat-down? Okay, he was not initially arrested. He was detained because of the possession of the meth pipe and placed in the officer's vehicle. Then, it doesn't indicate that there's any arrest until he actually gets back to the station when they processed all of that, which would have been after 440. Well, I guess it depends whether you think he was arrested when he was, quote, detained and put in the back of an old car. Yes, Your Honor, and that happened immediately after the pat-down. I see, because they saw the pipe during the pat-down. Yes, Your Honor. Very well, thank you for your argument. Thank you. Mr. Taylor, we'll hear from you in rebuttal. Thank you. Very briefly, I want to switch to the pat-down search. It is our position that the pat-down was not done with consent. I know the government cites in their support Espinoza. I want to be very clear of our position. One, we think there is a distinction between Espinoza in this case. In that case, there was a non-fluent English speaker who was communicating with the officer using hand gestures as well as the officer. So, I believe that's a big distinguishing fact. But clearly, in this case, I think it's the timing of the request for the pat-down and the actual pat-down itself. It's almost simultaneous to the point where I don't believe that this was actually a question trying to obtain consent, but really a rhetorical question for mere effect as part of the investigation to establish that the officer sought consent prior to the pat-down. So, I don't believe there's actual consent here. And to the point regarding any sort of actual suspicion of a dangerous weapon, again, we go back to the lack of reasonable suspicion as to the initial traffic stop and to the extended traffic stop. But we have to look at specifically Mr. Kennedy and what he was doing. And I know we have the Davis case cited in the government's brief, but I think the big distinction there is they left out key points, including that the defendant in that case was trying to hide something, and they saw a bulge in his sweatshirt, and also that the officer testified that he had hair standing on the back of his neck because of the demeanor of the defendant in that case. And with that, I see my time has expired. So, I would submit and ask that this court reverse the decision on the motion to press. Thank you. Very well. Thank you to both counsel for your arguments. The case is submitted. The court will file an opinion in due course. That concludes the argument session for this afternoon.